FILED

2009 OCT 19 PM 3: 19

US DISTRICT COURT
MIDDLE DISTRICT OF FL
ORLANDO FLORIDA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**COURT FILE NO.: - _____**

6:09-cv-1775-ORL 28KRS

| | |
|---|---|
| Anton Stephen Wycklendt, | |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Superior Asset Management, Inc., a foreign Corporation, | **And Demand for Jury Trial** |
| Defendant. | |

## JURISDICTION

1.   Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2.   This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

3.   Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendant's transact business here.

## PARTIES

4.   Plaintiff Anton Stephen Wycklendt is a natural person who resides in the City of Deltona, County of Volusia, State of Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5.    Defendant Superior Asset Management, Inc. (hereinafter "Defendant Superior") is a collection agency operating from an address of 1000 Abernathy Rd. NE, Building 400, Suite 165, Atlanta, GA 30328 and 1901 West 10th Street, Suite B, Antioch CA 94509, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

6.    Sometime before 2009, Plaintiff incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5), namely, a Bank of America Visa credit card in the approximate amount of $160.00, which was used by Plaintiff to make personal purchases for transportation expenses, phone and personal need related items.

7.    Sometime thereafter, the alleged debt was consigned, placed or otherwise transferred to Defendant Superior for collection from the Plaintiff.

## JULY 2009 COLLECTION COMMUNCIATION

8.    On or about July 28, 2009, Plaintiff returned a call to Defendant Superior in response to various collection voice mails requesting a call back, which was a communication in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

9.   Gentry Starling (hereinafter "Starling"), an employee of Defendant Starling, answered the call from Plaintiff.

10.  Early in this collection call, Plaintiff told Starling that he wished to settle the debt.

11.  Starling responded that he would not recommend settling the debt as this would have a negative impact on Plaintiff's credit report.

12.  Plaintiff was led to believe by Starling that if he paid the debt in full it would not affect his credit.

13.  Starling insisted that the total debt be automatically taken out of Plaintiff's bank account and asked for an account number.

14.  After obtaining the account number, Starling insisted that Plaintiff immediately make a $100.00 payment.

15.  Plaintiff could not make the $100.00 payment and refused the payment but after further insistence on the part of Starling Plaintiff agreed to a $50.00 payment.

16.  Starling informed Plaintiff that there would be the initial $50.00 payment, three subsequent $100.00 dollar payments and a final payment of $78.82 automatically taken from Plaintiff's bank account.

17.   Without further notice, Defendant Superior charged Plaintiff's bank account $50.00 on July 28, 2009, $100.00 payment on August 10, 2009 and another $100.00 payment on August 24, 2009.

### SEPTEMBER 19, 2009 COLLECTION COMMUNICATION

#### *First Call on September 19, 2009*

18.   On or about September 19, 2009, Starling called Plaintiff at work around 2:30 in the afternoon.

19.   Plaintiff received the call from Starling in the presence of the Assistant Manager at Plaintiff's work and also his girlfriend.

20.   When Plaintiff answered, Sterling stated this is Starling from Superior Asset Management your card came back lost or stolen.

21.   Plaintiff explained that he had closed the bank account.

22.   Starling, in an angry and loud voice, stated why would you close the account as you knew we were taking money from it and also why would you not call us and let us know you were closing the account.

23.   Plaintiff explained to Starling that since some time had passed since Defendant Superior had taken a payment he believed that all of the payments had already been taken out of the account.

24.   Starling states you know the charges take up to 2 days to clear.

25.   Plaintiff explained that he has no idea how the payments are taken out.

26. Starling says angrily and loudly we need that money, when can you send us the money.

27. Plaintiff responds by telling Starling that he is unable to do anything at the moment because he is at work and he cannot deal with this matter at work.

28. Starling again loudly states we really need you to make the payment before it gets remitted from our offices.

29. Plaintiff again tells Starling that there is nothing he can do about it at the moment because he is at work and he is unable to take this call at work.

30. Starling loudly states we really need the payment, when can you send it, we really need the payment.

31. Plaintiff says I just wanted to settle this debt.

32. Starling screaming and yelling says No we will not settle, you owe us $78.82.

33. Plaintiff again says why won't you settle.

34. Starling screaming and yelling says because you owe us $78.82.

35. Plaintiff, desperately trying to get off the phone, tells Starling to take his new bank card information and that he will just make the payment now to get this over with.

36. Starling yelling says No you have to do it through Western Union, you have to wire us the money.

37.  Plaintiff asks why can't you just take the payment from my card over the phone.

38.  Starling angrily and in a threatening voice states why do you have an attitude, why do you have a tone with me.

39.  Plaintiff again tells Starling because I am at work and I don't like your yelling and screaming as I am at work and I don't want to deal with this at work and can't deal with this at work.

40.  Starling angrily and in threatening voice states well, you are the one that just bounced a check across state lines so I would watch my tone.

41.  Starling states I don't know why you are mad at me you are the one who put yourself in this situation.

42.  Plaintiff again tells Starling I can't deal with this because I am at work and I can't just leave work to send you the money.

43.  Starling continued to insist that he needed the money now and would not get off the phone.

44.  Plaintiff finally couldn't take it anymore and asked Starling for the information to send the money.

45.  Starling says It has to be a money gram and you can do it at Wal-Mart so take down the information.

46. Starling then refused to end the call until Plaintiff told him when he planned on going to send the money.

### Second Call  on September 19, 2009

47. Plaintiff calls Defendant Superior to speak with a manager.

48. John Doe answered the phone at Defendant Superior.

49. Plaintiff asks to speak with a manager.

50. John Doe asked for Plaintiff's name in order to pull up his account.

51. John Doe tells Plaintiff I see you owe this debt and that you have already spoken to someone today so when are you going to make the payment.

52. Plaintiff tells John Doe that he will not be sending the payment in until he can speak with a manger.

53. John Doe replied that if Plaintiff just sent the payment Plaintiff wouldn't have to worry about this any longer.

54. John Doe again insist that Plaintiff just send in the money and Plaintiff refuses and request to speak with a manager.

55. Plaintiff is placed on hold and after some time John Doe again picks up the phone and tells Plaintiff that he is still trying to locate a manager and asks Plaintiff when can you send the payment in.

56. John Doe transferred the phone to Jane Doe at Defendant Superior.

57.   Jane Doe asks Plaintiff what is the problem and Plaintiff tells Jane Doe everything that happened on the phone call with Starling.

58.   Jane Doe tells Plaintiff that the blame goes both ways as you were the one who closed the account and we wouldn't be in this situation if you would not have closed the account or told us that you were going to close the account.

59.   Jane Doe tells Plaintiff all we do is try to get our client their money on the date we tell them we will have their money and if we cannot get our client's money on the day will tell them, then we deal with it accordingly.

60.   Jane Doe proceeds to tell Plaintiff that this isn't customer service so when can he send the money.

*COLLECTION COMMUNICATION ON SEPTEMBER 22, 2009*

*First Call on September 22, 2009*

61.   On or about September 22, 2009, Fred Sawyer (hereinafter "Sawyer"), an employee of Defendant Superior, called Plaintiff at around 7:30 in the evening.

62.   Sawyer asked Plaintiff if he had sent the payment.

63.   Plaintiff informed Sawyer that he had not sent the payment and that Sawyer should not be communicating with him because he asked them to stop and also asked them to speak with his banker friend.

64.   Sawyer told Plaintiff that his account had been marked "flat."

-8-

65. Plaintiff informed Sawyer that he had spoken to a manager and that he was not going to send the payment.

66. Sawyer told Plaintiff that he saw the notation on the account and that the manager was the person who had marked the account "Flat."

67. Plaintiff told Sawyer to deal with his banker friend.

68. Sawyer stated why are you listening to your banker, what does your banker have to do with this, it is such a small amount of debt why won't you just pay it.

69. Sawyer told Plaintiff we are going to give you 2 days to make the payment or we are going to proceed.

70. Sawyer told Plaintiff that they will mark the account as unpaid and relate the account to Bank of America and then Bank of America can mark it as whatever they want on your credit report and then they will take any action they want according to your account.

71. Plaintiff hung up the phone.


## *Second Call on September 22, 2009*

72. Sawyer immediately called back and left a voice mail on Plaintiff's phone.

## COLLECTION CALL ON OCTOBER 8, 2009

73. Sawyer again called and left a voice mail on Plaintiff's phone.

## SUMMARY

74.   The conduct of Gentry Starling, Jane Doe and Fred Sawyer in harassing and abusing Plaintiff in an effort to collect this debt, by repeatedly engaging Plaintiff in telephone conversations and verbally abusing and threatening Plaintiff, was a violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692d, 1692d(2), 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(8), 1692e(10), 1692f, and 1692f(1), amongst others, as well as violations of the Florida Consumer Collections Practices Act.

75.   At no time during these collection communications did Gentry Starling, Jane Doe and/or Fred Sawyer ever provide Plaintiff with the notice required by 15 U.S.C. §§ 1692e(11), in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692e, 692e(5), 1692e(10), 1692e(11), and 1692f, amongst others.

### *RESPONDEAT SUPERIOR LIABILITY*

76.   The acts and omissions of these individual collectors, and the other debt collectors employed as agents by Defendant Superior who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant Superior.

77.   The acts and omissions by these individual employees were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant Superior in collecting consumer debts.

78.   By committing these acts and omissions against Plaintiff, these individual collectors were motivated to benefit their principal, Defendant Superior.

79.   Defendant Superior is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not limited to violations of the FDCPA and Florida law, in their attempts to collect this debt from Plaintiff.

## TRIAL BY JURY

80.   Plaintiff is entitled to and hereby respectfully demands a trial by jury.  US Const. amend. 7.  Fed. R. Civ. Pro. 38.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

81.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

82.   The foregoing acts and omissions of each and every Defendant and its agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to Plaintiff.

83.   As a result of each and every one of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each and every Defendant herein.

## COUNT II.

## VIOLATION OF THE FLORIDA CONSUMER COLLECTIONS PRACTICES ACT

### FLA. STAT. § 559.55 TO 559.785

84.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

85.   The foregoing acts and omissions of each and every Defendant constitute numerous and multiple violation of the FCCPA including but not limited to, §§ 559.72(7) and 559.72(8), with respect to the Plaintiff.

86.   As a result of each and every one of Defendants' violations of the FCCPA, Plaintiff is entitled to actual damages pursuant to Fla. Stat. §559.77; statutory

damages in an amount up to $1,000.00 pursuant to Fla. Stat. §559.77; and reasonable attorney's fees and costs pursuant to Fla. Stat. §559.77, form each and every Defendant herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each and every Defendant;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant; and

- for such other and further relief as may be just and proper.

## COUNT II.

## VIOLATIONS OF THE FLORIDA CONSUMER COLLECTIONS

## PRACTICES ACT.

## FLA. STAT. § 559.55 TO 559.785

- for an award of actual damages pursuant to Fla. Stat. §559.77 against each and every Defendant;

- for an award of statutory damages of $1,000.00 pursuant to Fla. Stat. §559.77 against each and every Defendant;

- for an award of costs of litigation and reasonable attorney's fees pursuant to Fla. Stat. §559.77 against each and every Defendant; and

- for such other and further relief as may be just and proper.

Respectfully submitted,

**The Law Offices of J. David Davila, P.A.**

Dated: October 16, 2009

**By: s/J. David Davila, Esq.**
J. David Davila, Esq.
Attorney I.D.#0050596
801 International Pkwy, 5th Floor
Lake Mary, Florida 32746
Telephone: (407) 562-1886
Facsimile: (407) 562-2001
david@davilalawoffices.com

Jdd/                              **Attorney for Plaintiff**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA      )
                            )

COUNTY OF SEMINOLE   )

Plaintiff Anton S. Wycklendt, having first been duly sworn and upon oath, deposes and says as follows:

1. I am the Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

Anton S. Wycklendt